Michael St. James, CSB No. 95653
ST. JAMES LAW, P.C.
155 Montgomery Street, Suite 1004
San Francisco, California 94104
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
ecf@stjames-law.com

Counsel for Debtor

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>BIJOU-MARKET, LLC<br><br>    Debtor | Case No. 06-30118 TC<br>Chapter 11<br><br>DATE: June 19, 2006<br>TIME: 9:30 a.m.<br>JUDGE: Hon. Thomas Carlson |

# REPLY BRIEF IN SUPPORT OF
## MOTION TO ASSUME CERTAIN CONTRACTS

Through its Objection, the United States Trustee first raises two non-issues. She then presents an abstruse and theoretical basis on which she opposes assumption of the Bookkeeping Contract and attempts to shoe-horn Consolidated Bookkeeping into a "bankruptcy professional" / hourly rate / fee application compensation model, a position potentially endangering the ability of the Debtor's business to continue to operate.

In fact, the tests applied by decisional law and the implications of Ninth Circuit authority and the Bankruptcy Code suggest that Consolidated Bookkeeping need not be treated as a "professional." Should the Court conclude otherwise, it should employ Consolidated Bookkeeping under Section 327 *and* approve its compensation consistent with the Bookkeeping Contract pursuant to Section 328(a).

## I. THE NON-ISSUES

Without authority, the U.S. Trustee speculates that a month-to-month contract might not be an executory contract, apparently because it can be terminated on one month's notice.

This is a novel contention that would, if true, apparently apply with equal force to the Debtor's month-to-month contract for security services with ADT (which recently urged in correspondence that its "executory contract" should be assumed) and to the Debtor's month-to-month rental of the La Gals premises at 1028 Market Street (apparently thereby denying that landlord the protections of Section 365(d)(4).) Decisional law rejects the U.S. Trustee's novel theory. *In re Werbinski* 271 B.R. 514 (Bkrtcy. E.D. Mich. 2001 ("It is irrelevant for the purpose of section 365(d) that the debtor… rented on a month-to-month basis."); *In re Brewer*, 233 B.R. 825 (Bkrtcy. E.D. Ark. 1999) (same); *In re Miller*, 282 F.3d 874 (6th Cir. 2002), (month-to-month storage charge for mobile home was an executory contract); *In re Three Star Telecast, Inc.*, 93 B.R. 310 (Dist. P.R. 1988) (Contract consisting "of granting a month to month entitlement to show '60 Minutes'" was executory contract).

Second, the U.S. Trustee notes that Roger Forbes is an owner of Consolidated Bookkeeping, an indirect minority equity holder of the Debtor, and an indirect lessor of the 1077 Market Street premises. The Debtor volunteered all of this information to the United States Trustee in the course of the Initial Debtor Interview at the commencement of the case. The Debtor submits that these connections no more cast doubt on the wisdom of assuming the Bookkeeping Contract than on the wisdom of retaining the

1077 Market Street premises. The U.S. Trustee argues that these connections should be disclosed to all creditors,[1] but the Debtor submits that they have been disclosed to the only party who might likely care about them, the U.S. Trustee. If the Court disagrees, the Debtor is willing to give such notice as the Court directs to such persons as the Court directs.

## II. A BOOKKEEPER IS NOT A "PROFESSIONAL"

The bulk of the U.S. Trustee's objection is dedicated to the proposition that Consolidated Bookkeeping must be employed pursuant to Section 327 of the Bankruptcy Code. The answer to the abstract question posed by the U.S. Trustee is far from clear, but it seems highly likely that the U.S. Trustee is wrong. In any event, the important issue is the consequence of the answer: if Consolidated Bookkeeping cannot be employed as a "professional," or if compliance with the Guidelines – and the hourly rate / fee application regime – is deemed mandatory, the result would be extremely injurious to the estate. If, as discussed below, Consolidated Bookkeeping can be employed as a professional on terms consistent with its Bookkeeping Contract, the question is of theoretical interest only.

### A. *Under Most Tests, Consolidated Bookkeeping Is Not a "Professional"*

Relying primarily on a pair Bankruptcy Court decisions from Pennsylvania; *In re CNH, Inc.*, 304 B.R. 177 (Bkrtcy. D. Penn. 2004) (held: manager of nurses was not a "professional"); and Montana; *In re Semenza*, 121 B.R. 56 (Bkrtcy. D. Mont. 1990) (held: paralegal is not a "professional"); the U.S. Trustee suggests that the two criteria to consider are whether "the employee's function is related to the administration of the estate and then whether that employee … was given discretion or autonomy." Objection, 3:17-19. As so formulated, the test is clearly inadequate: "Wiz", the night manager at the Market Street Cinema, clearly has "discretion and autonomy," and his efforts are key to "the

---

[1] Assuming *arguendo* that the U.S. Trustee is correct and the Debtor submitted an application to employ Consolidated Bookkeeping as a professional under Section 327, the Rule 2014(a) disclosure would be served only on the U.S. Trustee, not all creditors. It is difficult to understand why the U.S. Trustee thinks that more extensive notice should be required in this case.

REPLY BRIEF IN SUPPORT OF
MOTION TO ASSUME CERTAIN CONTRACTS  3

administration of the estate," but he equally clearly is not a "professional" for the purposes of Section 327.

The U.S. Trustee's analysis seems to be an abbreviated presentation of the "quantitative" and "qualitative" analyses discussed in *In re First Merchants Acceptance Corporation*, 1997 LEXIS 2245 (Bkrtcy. D. Del. 1997):

> The judicial trend with respect to the definition of "professional" can be divided into two camps, those adopting a quantitative analysis and those adopting a qualitative analysis. Under the quantitative analysis, the definition of "professional" is limited to those occupations which play a central role in the administration of the debtor proceeding, and not those occupations which are involved in the day-to-day mechanics of the debtor's business. *In re Seatrain Lines, Inc., 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981);* see also *In re River Ranch, 176 B.R. 603, 604 (Bankr. M.D. Fla. 1994); In re Bicoastal Corporation, 149 B.R. 216, 218 (Bankr. M.D. Fla. 1993)* (defining professional as person who assists debtor in administration of bankruptcy). Under the qualitative analysis, a "professional" is an employee that is given discretion or autonomy in some part of the administration of the debtor's estate. *In re Fretheim, 102 B.R. 298, 299 (Bankr. D. Conn. 1989)* (espousing qualitative analysis and criticizing quantitative approach as "difficult to apply and subject to arbitrary and inconsistent results"); *In re Semenza, 121 B.R. 56, 57 (Bankr. D. Mont. 1990)* (adopting qualitative analysis).

Under these tests, Consolidated Bookkeeping would not be a "professional". In terms of the quantititative analysis, the bookkeeping services provided "involve the day-to-day mechanics of the debtor's business."  In terms of the qualitative analysis, neither bookkeeping nor the preparation of financial reports involve the exercise of "discretion or autonomy in… the administration of the debtor's estate."

The *First Merchants Acceptance* Court concluded that neither test was adequate, and instead proposed a six part test:

> The factors embrace both the qualitative and quantitative approaches and include the following: (1) whether the employee controls, manages, administers, invests, purchases or sells assets that are significant to the debtor's reorganization, (2) whether the employee is involved in negotiating the terms of a Plan of Reorganization, (3) whether the employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations; (4) whether the employee is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate, i.e. the qualitative approach, (5) the extent of the employee's involvement in the administration of the debtor's estate, i.e. the quantitative approach; and (6) whether the employee's services involve some degree of

> special knowledge or skill, such that the employee can be considered a "professional" within the ordinary meaning of the term. In applying these factors, the Court stresses that no one factor is dispositive and that the factors should be weighed against each other and considered in toto.

Id., cited with approval in *In re American Tissue, Inc.*, 331 B.R. 169 (Bkrtcy. D. Del. 2005). It is submitted that Consolidated Bookkeeping clearly "fails" the first four criteria, only arguably passes the fifth criteria, and only passes the sixth criteria with respect to a small portion of the services it provides.

It is submitted that the quantitative test, the qualitative test and the six-part *First Merchants Acceptance* test all suggest that Consolidated Bookkeeping should not be treated as a "professional" for purposes of Section 327.

### B. Other Factors Suggest That Consolidated Bookkeeping is Not a "Professional"

Research has uncovered only one appellate case from the Ninth Circuit that addresses, albeit indirectly, whether a bookkeeper is a "professional".

"In administering the debtor's estate, the Trustee hired a bookkeeper, Carla Ilfield… Ilfield was not an in-house employee of the Trustee and was not employed under §327(a)." *In re Jenkins*, 130 F.3d. 1335, 1336-7 (9th Cir. 1997). The bookkeeper was characterized as a "paraprofessional", and the Ninth Circuit explained that "there is no provision in the Code that allows compensation directly to a paraprofessional, and § 330(a)(1) does not identify a paraprofessional as a person eligible for an award." *Jenkins,* 130 F.3d. at 1339. In contrast, "Section 327 allows trustees to hire professionals to perform services requiring special expertise… and these professionals may be separately compensated for actual, necessary services under §330(a)." *Jenkins,* 130 F.3d. at 1341. Thus, *Jenkins* can be seen as strongly suggesting that a bookkeeper is not a "professional" for the purposes of Section 327.[2]

---

[2] *Jenkins* can only be characterized as suggestive, because the issue at hand in *Jenkins* was whether payments to third parties assisting the trustee could exceed the Section 326 cap on trustee's compensation. *Jenkins* held that professional fees paid under Section 330 to Section 327 professionals could exceed the cap, but fees paid to non-Section 327 paraprofessionals could not exceed the cap. As a consequence, the holding is not directly relevant to the question at hand.

Section 327(b) is also instructive. That section authorizes the trustee to employ professionals *without court approval* – and presumably without compliance with any of the other requirements and procedures associated with Section 327 – if two conditions exist: the employment is in connection with an operating business that has regularly employed such professionals in the past and the professional is employed on a salaried basis. Admittedly, this provision contemplates in-house counsel or professionals, not a function outsourced to another entity. Nonetheless, the two salient criteria of Section 327(b) are present here. The services are routine services regularly performed in the operation of the business – here, bookkeeping – and the services are compensated on a flat "salary" basis – a fixed monthly fee. The policies advanced by Section 327(b)'s exemption are equally advanced by not finding Consolidated Bookkeeping a "professional" here.

In conclusion, the tests applied by most courts suggest that Consolidated Bookkeeping is not a "professional". In the only appellate decision in the area, the Ninth Circuit was content to view a bookkeeper as a "paraprofessional" not subject to treatment under Section 327(a). Finally, the policies advanced by Section 327(b) are advanced by not finding Consolidated Bookkeeping a "professional" in this case.

### III. IN THE ALTERNATIVE, EMPLOYMENT UNDER SECTION 327 AND FIXED COMPENSATION UNDER SECTION 328(a) SHOULD BE APPROVED

#### *A. Consolidated Bookkeeping Satisfies the Requirements of Section 327*

Under Section 327(a), the Debtor may employ professional persons provided that (1) they "do not hold or represent an interest adverse to the estate", and (2) they are "disinterested persons." In addition, such professionals must disclose all of their "connections" with the Debtor, its creditors and parties in interest. Fed. R. Bankr. P. 2014(a).

As presented in the Supplemental Declaration of Diana Webb, Consolidated Bookkeeping has disclosed all of its "connections" with this case. None of those connections can be characterized as "adverse" to the estate. Section 327(1)

Consolidated Bookkeeping also satisfies the criteria for a "disinterested person" under the 2005 amendments to the Bankruptcy Code. The Bookkeeping Contract required payment in advance, so

Consolidated Bookkeeping is not a "creditor." See, Declaration of Diana Webb filed herein on May 19, 2006, Paragraph 4 (no monetary defaults to be "cured"). Section 101(14)(A).

Consolidated Bookkeeping is also not an "insider". Id. It clearly exercises no control over the Debtor. It is highly unlikely that owners of Consolidated Bookkeeping – who are also indirect, non-managing minority members of the Debtor – are "insiders" of the Debtor. Compare, Section 101(31)(B) shareholder of debtor corporation who is not an officer, director or in control is not an insider), Section 101(31)(C) (partner of debtor partnership who is not a general partner or in control is not an insider). Even if the owners of Consolidated Bookkeeping were insiders, a corporation they own is not an insider. *In re Enterprise Acquisition Partners, Inc.* 319 B.R. 626 (BAP 9th Cir. 2004).

Finally, Consolidated Bookkeeping is not an equity holder, an officer, a director or an employee of the Debtor. Section 101(4)(B). Since Consolidated Bookkeeping does not have an interest "adverse" to the estate, it cannot, *a fortiori,* have an "interest materially adverse" to the estate. Section 101(14)(C).

Thus, the Court may authorize the employment of Consolidated Bookkeeping under Section 327(a) of the Bankruptcy Code.

### *B.     The Court Should Approve The Terms Of Consolidated Bookkeeping's Compensation.*

The implication of the U.S. Trustee's Objection is that all professional compensation must be on an hourly rate / fee application basis in compliance with the Court's Guidelines. The Bankruptcy Code is far more flexible. Section 328(a) permits professionals to be retained "*on any reasonable terms* and conditions of employment, including on a retainer, on an hourly basis, *on a fixed* or percentage *fee basis*, or on a contingency basis." (emphasis supplied). The underscored portion of the foregoing text was inserted by the 2005 Amendments to the Bankruptcy Code, making explicit the Court's power to authorize employment on a fixed fee basis. Here, the Bookkeeping Contract contemplates payment on a "fixed fee basis."

Thus, the Bankruptcy Code clearly permits the Court to approve the terms of the Bookkeeping Contract: a fixed monthly fee, payable in advance, for ordinary services; in the unusual event of a special project (which had never occurred pre-petition), payment promptly following billing ("Contract Terms"). No policy is advanced by attempting to shoe-horn Consolidated Bookkeeping into an hourly

rate / fee application regime. See generally, Jacobson, "The Hours" *California Lawyer* (April 2006),[3] noting that billing by the hour is a comparatively recent development among lawyers and noting that it is a problematic practice. This is a case in which it would be appropriate for the Court to approve the Contract Terms. The flat fee Consolidated Bookkeeping charges for all bookkeeping, payroll and financial reporting is far lower than the Debtor could obtain elsewhere, and that savings is rendered possible only because Consolidated Bookkeeping performs volume services on a flat fee basis to all of its clients: if it was required to create the infrastructure necessary to bill on an hourly rate basis and comply with the Guidelines, it would not be cost-effective to retain the Debtor as a client. See, Webb Declaration, Paragraph 3. Clearly, the loss of its bookkeeping, payroll and financial reporting would be disastrous to the Debtor.

Were the Court to approve the employment of Consolidated Bookkeeping under Section 327(a) *and* approve the Contract Terms under Section 328(a), the result would be almost identical to the result arising from simply assuming the Bookkeeping Contract. The only practical difference would be the Court's ability under Section 328(a) to alter Consolidated Bookkeeping's compensation after the fact if it determines that the "terms and conditions [of employment] prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." Imposing that condition is not controversial to the Debtor or to Consolidated Bookkeeping: they are happy to stipulate to that result whether Consolidated Bookkeeping is deemed a "professional" or not.

Consistent with the approach adopted by the Court with respect to the compensation of the Claimant's Representative, if the Court determines that Consolidated Bookkeeping should be employed as a professional under Section 327 and the Contract Terms approved pursuant to Section 328, the Debtor submits that it would be appropriate to require Consolidated Bookkeeping to submit all of its invoices to the U.S. Trustee prior to the closing of the case, and if the U.S. Trustee has concerns, those concerns could then be submitted to the Court. In the absence of an expression of concern, however, compensation based on the Contract Terms should be left undisturbed, without requiring further action on the part of Consolidated Bookkeeping or the Debtor.

---

[3] A copy of the article is attached hereto for the convenient review of the Court and the parties.

## IV. CONCLUSION

It is undisputed that the Bookkeeping Contract is substantially in the best interests of the estate and should be assumed. Although it is not clear that designation as a "professional" would have any direct bearing on the assumption or rejection of the Bookkeeping Contract, it seems unlikely that Consolidated Bookkeeping is a "professional" for the purposes of Section 327. In the event the Court determines otherwise, it should authorize the employment of Consolidated Bookkeeping under Section 327 and approve the Bookkeeping Contract as setting a "fixed fee" basis for compensation under Section 328(a).

DATED: June 13, 2006                    ST. JAMES LAW, P.C.


By:  /s/  *Michael St James*  .
     Michael St. James
     Counsel for the Debtor