Michael St. James, CSB No. 95653
ST. JAMES LAW, P.C.
155 Montgomery Street, Suite 1004
San Francisco, California 94104
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
ecf@stjames-law.com

Counsel for Debtor

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| In re | ) | Case No. 06-30118 TC |
| | ) | Chapter 11 |
| BIJOU-MARKET, LLC | ) | |
|                 Debtor | ) | |
| | ) | |

### NOTICE OF INTENT TO CLOSE LA GALS AND STATUS REPORT

Bijou-Market, LLC (the "Debtor") presents this Notice and Report to advise creditors and parties in interest of its intent to close the Club known as La Gals and to present the status of its bankruptcy case:

THE BUSINESS: The Debtor operates two Clubs, the Market Street Cinema and La Gals. Since August of 2005, the Clubs have been operating at a loss. The Debtor has enjoyed some success in reducing the operating losses and believes that within the next few months the Clubs could be restored to break-even and ultimately to profitable operations. As presently operated, however, the Clubs will never enjoy robust profitability.

DANCER CLASS ACTIONS: In recent years, a number of class action lawsuits have been filed against strip clubs alleging that the mechanism for dealing with Dancers – whether as independent contractors, employees or in some other relationship – violates state labor laws. In most cases, when Dancers are ultimately asked to submit claims, a few small claims are actually filed. For example, in the Centerfolds' lawsuit, the settlement was $500,000, the class action attorneys were paid half of that and only 42 claims aggregating $49,000 were ultimately submitted by Dancers – the balance was paid over to charity. This result was consistent with other Dancer class action cases, in which the lawyers for the Dancers were the sole or primary beneficiaries of any recovery.

THE ROE LAWSUIT: Approximately three years ago, a dancer class action was commenced against the Debtor (the "Roe Lawsuit"). In the course of three years, the Debtor spent more than $200,000 in attorney's fees *even though* the lawsuit was in its infancy. In the beginning of 2006, the lawsuit entered the discovery stage, in which it was expected that attorney's fees would skyrocket without generating a benefit to anyone. Instead of proceeding with litigation, the Debtor commenced this bankruptcy case.

THE BANKRUPTCY FILING    The Debtor commenced this case for the following reasons:  (1) The Debtor had been losing money at a substantial rate and, even after the business stabilized, it could not expect to pay the attorney's fees that would likely be incurred in defending the Roe Lawsuit, (2) in some respects managers at the stores had violated company policies to the detriment of Dancers, and (3) if claims were filed at levels consistent with prior Dancer class action cases, the Debtor was much more likely to raise funds to be able to pay all claims in full than to fund ongoing litigation.  The Debtor therefore commenced this Chapter 11 case and solicited the filing of Dancer claims in the expectation that it would promptly pay the claims in full and emerge from Chapter 11.

RESULTS OF THE CLAIM PROCESS:    More than 100 Dancer claims were timely filed.  The aggregate amount of those claims is estimated to be more than $12 million.  The average claim sought more than $100,000.  The Debtor believes that it could successfully defend the bulk of the claims on the merits.  Unfortunately, that defense would prove expensive, and even if it were very substantially successful – eliminating 75%, or even 90% of the amount of the claims – the remaining liability might nonetheless exceed anything that could be paid either from the operation of the Clubs or, the Debtor believes, from their sale.  Under the circumstances, the significant legal fees that would be incurred objecting to claims and attempting to obtain this reduction in their amount might not prove economically warranted.

CLOSING LA GALS:    La Gals operates on a month-to-month rental, and the Debtor has been advised that the landlord intends to re-develop the building in the near term, necessitating a closing of the Club.  La Gals currently operates at a loss.  Had matters unfolded as originally anticipated, management might have maintained operations at La Gals until the building was re-developed; under the current circumstances, in which the Debtor faces claims that are a multiple of the value of its assets, the Debtor cannot prudently continue to lose money so as to maintain operations at La Gals.  The Debtor therefore proposes to close La Gals on August 11, 2006.  It is unlikely that the La Gals jobs will be absorbed by the other Club.

NEXT STEPS:    The Debtor intends to attempt to determine whether the Market Street Cinema has a meaningful realizable sale value.  If it cannot be sold or otherwise generate material value, it may be appropriate to close that Club as well, eliminating the prospect of any recovery on creditor claims.  Absent a successful sale it is difficult to see a course of action that would yield material value to creditors.  The Debtor has taken initial steps toward opening a constructive dialogue with the attorneys at Minami, Lew & Tanaki, the lawyers who brought the Roe Lawsuit and have filed a class action claim for an additional $35 million.  If the Debtor cannot reach agreement with that constituency, it will also be difficult to achieve a successful conclusion to the case.

Contrary to the Debtor's expectations at the beginning of the case, it now seems highly unlikely that there could be a successful conclusion to this case and a distribution to creditors in 2006.

DATED:  July 31, 2006                                    ST. JAMES LAW, P.C.


                                                                                By:  /s/  Michael St James  .
                                                                                        Michael St. James
                                                                                        Counsel for the Debtor