Michael St. James, CSB No. 95653
ST. JAMES LAW, P.C.
155 Montgomery Street, Suite 1004
San Francisco, California 94104
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
ecf@stjames-law.com

Counsel for Debtor

# UNITED STATES BANKRUPTCY COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re

**BIJOU-MARKET, LLC**

              Debtor

Case No. 06-30118 TC
Chapter 11

DATE: November 17, 2006
TIME: 9:30 a.m.
JUDGE: Hon. Thomas Carlson

## DECLARATION OF JOSEPH CAROUBA IN SUPPORT OF BORROWING MOTION, MOTION TO PAY APPRAISER AND MOTION TO ASSUME INSURANCE CONTRACT

I, Joseph Carouba, declare under penalty of perjury:

1. I am the designated responsible individual for the above-referenced Debtor. I am the Managing Member of Little Darlings of San Francisco, Inc., which is the sole member of Bijou-Market, LLC. I am also the Managing Member of BSC Management, which conducts the management of the Debtor's business operations. I make this Declaration of my own personal knowledge, and if called as a witness I could and would competently testify as follows:

2. As of the commencement of the case, the Debtor operated two live adult theaters located on opposite sides of the 1000 block of Market Street in San Francisco, known as the Market Street Cinema and La Gals (collectively, the "Clubs").

3. In August of 2005, in response to allegations of prostitution at the Clubs, the Debtor instituted a set of changes to its business operations (the "Anti-Prostitution Measures") intended to eliminate the potential for allegations that prostitution occurred at the Clubs. Among those Anti-Prostitution Measures included the installation of cameras in all private rooms and booths, and off-site monitoring of the film generated by those cameras.

4. The Anti-Prostitution Measures were effective in demonstrating that prostitution did not occur at the Clubs. They also generated adverse business consequences. Following the imposition of the Anti-Prostitution Measures, the Clubs face substantial turnover among the Dancers and a substantial fall-off in customer patronage, leading to substantial operating losses. The Clubs' operating loss for the month of October, 2005 was $97,799. By the time the bankruptcy case was commenced at the end of February 2006, losses aggregated some hundreds of thousands of dollars, but were declining. During the course of the bankruptcy case, in the seven months through September, 2006, the aggregate loss was $344,174. Operations have been stabilized, and in September the Debtor enjoyed a marginal operating profit of $7,802.

5. When the case was commenced, the Debtor was owed approximately $195,000 from other entities. During the pendency of the case, the Debtor has collected on those obligations and used that source of cash to maintain its operations in the face of its losses. As of the close of August, 2006, the remaining balance owed to the Debtor was only $12,000.

6. While I expect some further improvements in the Debtor's financial operations, they will likely be limited in scope. I believe that revenues are essentially stable and unlikely to increase substantially. While some further cost savings may be possible, I do not expect them to be dramatic. Going forward, I expect the Debtor's operations to be break-even to somewhat profitable.

7. At this juncture, the Debtor's only viable asset that could from a basis for a distribution to debtors is the Market Street Cinema. (La Gals, the Debtor's other club, was closed in August.) If the Market Street Cinema cannot form the basis for a distribution to creditors, it will be closed and the case will be converted to a Chapter 7. I do not believe that, in liquidation, the Market Street Cinema will have any appreciable value.

8. One alternative would be to undertake to sell the Market Street Cinema. I think the market for such a business is thin, and so the estate might face significant delays obtaining a bid, let alone two or more. In view of the marginal operating characteristics of the business at present, those delays could be very destructive to the interests of creditors.

9. As a potential alternative, the Debtor has agreed with the representatives of the principal creditor group to retain an appraiser on behalf of the estate to assist the Debtor and the creditors in analyzing the value of the Market Street Cinema. Optimally, were the affected parties to agree upon a value, an entity related to the Debtor might offer to fund a Plan of Reorganization in which that value would be contributed to creditors in full satisfaction of their claims. In the event that negotiated alternatives failed, the Debtor would likely sell or closed the business.

10. It is my understanding that the firm of Minami, Lew & Tanaki, representative of a majority of the claims against the estate, is preliminarily interested in exploring a consensual disposition through a Plan of Reorganization. In order to provide that firm and the Debtor with useful information respecting the realizable value of the Debtor's assets, the Debtor has agreed to employ Financial Strategies Consulting Group as an appraiser to provide such information.

11. The Debtor requires a lending facility in order to meet four needs. First, although the Debtor believes that the business is stable, there is a material risk of losses in the future, whether due to seasonal abnormalities or other causes. It is prudent for the Debtor to have any available source of cash to meet unexpected losses from operations.

12. Second, the appraiser that has been jointly selected by the principal creditor constituency and Debtor requires an aggregate fee of something less than $13,000. The Debtor does not have available cash sufficient promptly to pay such a fee.

13. Third, as a result of the annual audit of the Debtor's worker's compensation insurance, it owes approximately $35,000 with respect to the adjusted premium owed for its 2005 policy. Curing this arrears is essential to maintain ongoing workers compensation coverage, but the Debtor does not have free sources of cash sufficient to fund it.

14. Finally, the Debtor is in the midst of a construction project0, estimated to aggregate $500,000, intended to bring the Market Street Cinema's physical plant up to code, which requires it to expend cash in excess of ordinary operating expenses.

15. I have investigated the alternatives available for obtaining credit for the Debtor. I have been involved in the live adult entertainment for approximately a decade, and based on that involvement I believe that it is virtually impossible for a business in an industry comparable to the Debtor's to obtain credit from ordinary lenders or financial institutions. I have sought unsecured loans on behalf of the Debtor and have met with no success whatsoever.

16. Likewise, with the exception of the loan proposed in this Motion, I have been unable to obtain credit for the Debtor on a secured basis. This is not surprising because the Debtor's "hard assets" have limited realizable value and its going concern value is limited due to the operating losses it has suffered since August of 2005.

17. I have obtained the agreement of Déjà Vu of San Francisco, LLC, the operator of the "Centerfolds" club, to loan the Debtor up to $100,000 on an "as needed" basis, subject to the following terms:

    a. Interest will accrue on the drawn down balance at the rate of 1% above prime, the interest rate to be determined quarterly at and after the first borrowing. Unless waived by the lender, interest shall be paid on a monthly basis.

b. The loan will be secured by a lien of all of the property of the Debtor, exclusive of causes of action arising under Chapter 5 or Sections 723(a) or 724(a) of the Bankruptcy Code, but will be subject to a carve out in favor of the U.S. Trustee, constituent with the Guidelines.

c. The loan will be enforceable only upon entry of an Order of the Court authorizing such enforcement.

18. I believe that borrowing on these terms is substantially advantageous to the estate. I also believe that borrowing on comparable terms could not be obtained from any other source.

I declare under penalty of perjury according to the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed in ___SAN RAFA CA___, on October 71, 2006.

_/s/ Joseph Carouba_
Joseph Carouba

DECLARATION OF JOSEPH CAROUBA IN SUPPORT
OF BORROWING MOTION, PAYMENT TO APPRAISER & INSURANCE MOTION